| | |
|---|---|
| TARIK PROPES, | Civil No. 12-1784 (JRT/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |
| AURORA LOAN SERVICES, | |
| Defendants. | |

Tarik Propes, Post Office Box 8553, Minneapolis, MN 55408, *pro se*.

Eldon J. Spencer, Jr. and James M. Jorissen, **LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.**, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, for defendant.

Plaintiff Tarik Propes defaulted on his mortgage and defendant Aurora Loan Services ("Aurora") commenced foreclosure proceedings. Propes' complaint alleges that defects in the chain of title deprive Aurora of the ability to foreclose and also that Aurora is liable for slander of title. Propes seeks a preliminary injunction to prevent a sheriff's sale of his property pending resolution of the merits of this action. Because the Court finds that Propes is unlikely to succeed on the merits and that the balance of equities does not favor Propes, the Court will deny the motion.[1] Aurora's failure to record attempted assignments or record interests in the debt does not prevent foreclosure.

---

[1] Although Rule 65 of the Federal Rules of Civil Procedure appears to envision a hearing on motions for a preliminary injunction, *see* Fed. R. Civ. P. 65(a)(2), the Court is not required to hold a hearing when there is not a material factual controversy. *See United Healthcare Ins. Co.*

**BACKGROUND**

In April 2006, Propes obtained a loan and executed a mortgage under which Mortgage Electronic Registration Systems, Inc. ("MERS") was the mortgagee. (Aff. of Michael R. Sauer ¶ 2, Ex. 1 at 1, Oct. 15, 2012, Docket No. 12.) In April 2010, Propes defaulted on the mortgage. (*Id.* ¶ 3.)

On March 16, 2011, MERS attempted to assign the mortgage to Aurora. (*Id.* ¶ 4.) Aurora alleges that when it attempted to record the March 16 assignment, the Ramsey County Registrar of Titles rejected the assignment because it contained an incorrect Torrens document number. (*Id.*) On October 22, 2011, MERS again attempted to assign the mortgage to Aurora and the assignment was again allegedly rejected by the Registrar of Titles, this time because it lacked a copy of a power of attorney for Aurora's parent company.[2] (*Id.*) Counsel for Aurora commenced foreclosure proceedings by publishing notice that the sale would occur on January 3, 2012, (*id.* ¶ 5), but on December 30, 2011, counsel for Aurora learned that the second attempted assignment had not been recorded and canceled the impending sale. (*Id.* ¶ 6.)

On January 12, 2012, MERS attempted for the third time to assign the mortgage to Aurora. (*Id.* ¶ 7.) Aurora successfully recorded the January 12, 2012 assignment on

---

*v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) ("An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists."). The controversy in the present case appears to be purely legal. The parties disagree about the legal significance of the facts, but not the facts themselves.

[2] Aurora avers that the original copy of the second attempted assignment was lost. (*Id.* ¶ 4.) At this stage, the Court does not see any significance to that fact.

June 1, 2012.[3]  (*Id.*)  Counsel for Aurora then recommenced foreclosure proceedings, initially scheduling the sale for July 17, 2012.  (*Id.* ¶ 9.)  The sale has been postponed several times and is currently scheduled for November 26, 2012.  (*Id.* ¶¶ 10-13.)

## ANALYSIS

### I. STANDARD OF REVIEW

The Court considers four factors in determining whether to grant preliminary injunctive relief: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest.  *Roudachevski v. All–American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).  Calculating the probability of success on the merits with "mathematical precision" is not required.  *Dataphase*, 640 F.2d at 113.  "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Id.*

### II. PROBABILITY OF SUCCESS ON THE MERITS

Propes' motion alleges that Aurora may not foreclose because (1) the March 16, 2011 and October 22, 2011 assignments of the mortgage from MERS to Aurora were not

---

[3] Propes provided a copy of the property's certificate of title on which the January 12, 2012 assignment and June 1, 2012 recording do not appear (*see* Pl.'s Memo., Ex. 1, Oct. 12, 2012, Docket No. 8), but Propes acknowledges in his brief that Aurora has recorded the January 12, 2012 assignment.  (*See id.* at 2.)

recorded; (2) the interests of Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-8 ("Lehman") are not recorded[4]; and (3) Aurora committed slander of title when it recorded the January 12, 2012 assignment of the mortgage because MERS had no interest to assign on January 12, 2012, by virtue of the prior assignment on March 16, 2011. The Court finds that Propes has demonstrated little, if any, probability of success on the merits.

### A. Recording Defects

Under Minnesota law, the party holding legal title to a mortgage may foreclose on a property if it complies with all the requirements of the foreclosure by advertisement statute. *Anderson v. CitiMortgage, Inc.*, Civ. No. 12-230, 2012 WL 3025100, at *4 (D. Minn. July 24, 2012) (citing *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494-501 (Minn. 2009)). The foreclosure by advertisement statute provides that all assignments of a mortgage must be recorded in order for a party to foreclose. Minn. Stat. § 580.02(3).

Propes acknowledges that Aurora has recorded the January 12, 2012 assignment of the mortgage from MERS, but contends that Aurora's attempts to foreclose are invalid because Aurora did not record the earlier attempted assignments. As explained above, Aurora avers that it attempted to record the March 16, 2011 assignment, but the County

---

[4] Propes apparently learned that Lehman had some interest when he sent Aurora a "qualified written request" under the Real Estate Settlement Procedures Act in August 2011 and Aurora's counsel's response to Propes noted, among other things, that "[t]he name of the current owner of the debt is U.S. Bank, N.A., in trust for, [Lehman]." (Pl.'s Memo., Ex. 2, Oct. 12, 2012, Docket No. 8.)

recorded; (2) the interests of Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-8 ("Lehman") are not recorded[4]; and (3) Aurora committed slander of title when it recorded the January 12, 2012 assignment of the mortgage because MERS had no interest to assign on January 12, 2012, by virtue of the prior assignment on March 16, 2011. The Court finds that Propes has demonstrated little, if any, probability of success on the merits.

### A. Recording Defects

Under Minnesota law, the party holding legal title to a mortgage may foreclose on a property if it complies with all the requirements of the foreclosure by advertisement statute. *Anderson v. CitiMortgage, Inc.*, Civ. No. 12-230, 2012 WL 3025100, at *4 (D. Minn. July 24, 2012) (citing *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494-501 (Minn. 2009)). The foreclosure by advertisement statute provides that all assignments of a mortgage must be recorded in order for a party to foreclose. Minn. Stat. § 580.02(3).

Propes acknowledges that Aurora has recorded the January 12, 2012 assignment of the mortgage from MERS, but contends that Aurora's attempts to foreclose are invalid because Aurora did not record the earlier attempted assignments. As explained above, Aurora avers that it attempted to record the March 16, 2011 assignment, but the County

---

[4] Propes apparently learned that Lehman had some interest when he sent Aurora a "qualified written request" under the Real Estate Settlement Procedures Act in August 2011 and Aurora's counsel's response to Propes noted, among other things, that "[t]he name of the current owner of the debt is U.S. Bank, N.A., in trust for, [Lehman]." (Pl.'s Memo., Ex. 2, Oct. 12, 2012, Docket No. 8.)

rejected the assignment because it was not in recordable form due to an incorrect Torrens document number. Aurora further avers that the County also rejected a second attempted assignment, dated October 22, 2011, because a copy of a power of attorney for Aurora's parent company was not included. Propes argues that the unrecorded attempted assignments create gaps in the chain of title and that Aurora was required to cure the defects in the March 16 attempted assignment and record that assignment, rather than execute a new assignment at a later date.

Under Minnesota law, an attempt to assign a mortgage that is not in recordable form is not sufficient to assign the mortgage. *See* Minn. Stat. § 507.413(a) ("An assignment . . . is sufficient to assign . . . a mortgage if . . . (3) the assignment . . . is in recordable form."). Because the attempted assignments of March 16, 2011, and October 22, 2011, were not in recordable form, they were not sufficient to assign the mortgage. And because the earlier attempted assignments were not sufficient to assign the mortgage, it appears that MERS still possessed an assignable interest in the mortgage on January 12, 2012. Although the foreclosure statute requires all assignments to be recorded, it would be unreasonable to interpret this requirement to include attempted assignments of the mortgage that were not in recordable form and therefore were not sufficient to assign the mortgage. The only effective assignment of the mortgage that the parties have brought to the Court's attention is the January 12, 2012 assignment, which has been recorded.[5] The Court has discovered no authority for the proposition that

---

[5] The Restatement (Third) of Property: Mortgages § 5.4 cmt. b (1997) states that "[r]ecordation of a mortgage assignment is not necessary to the effective transfer of the

MERS and Aurora were required to cure the first attempted assignment rather than execute a new assignment.

Propes also alleges that Aurora's failure to record Lehman's interests deprives Aurora of the right to foreclose. Propes submitted materials that indicate that Lehman's interest is in the debt, as opposed to the mortgage. (Pl.'s Memo., Ex. 2 at 2, Oct. 12, 2012, Docket No. 8.) The right to foreclose lies with the legal holder of the mortgage, regardless of whether that party also possesses interests in the corresponding promissory note. *See Stein v. Chase Home Fin., LLC*, 662 F.3d 976, 980 (8th Cir. 2011) (citing *Jackson*, 770 N.W.2d at 497). If Lehman's interests are solely in the debt, as appears to be the case, Aurora's right to foreclose does not hinge on Lehman's interest being recorded.

For these reasons, the Court finds that Propes has demonstrated very little, if any, probability of success on the merits with respect to his claim that Aurora's failure to record the earlier attempted assignments or to record Lehman's interests prevents Aurora from legally foreclosing on Propes' property.

### B. Slander of Title

Propes alleges that Aurora's recording of the January 12, 2012 assignment constituted slander of title because MERS had already assigned its interest in the

---

obligation." Even if this comment were precedential, which it is not, it would be consistent with the Court's preliminary analysis in this Order. Minnesota Statutes § 507.413 does not appear to require an assignment to be recorded in order to effectively transfer the mortgage. Rather, it requires the assignment to be "in recordable form" to be sufficient to assign the mortgage.

mortgage to Aurora on March 16, 2011 and, therefore, MERS had no interest to assign on January 12, 2012. Under Minnesota law, the elements of a slander of title claim are:

> (1) That there was a false statement concerning the real property owned by the plaintiff; (2) That the false statement was published to others; (3) That the false statement was published maliciously; and (4) That the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

*Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000).

As explained above, the Court disagrees with Propes' characterization of MERS and Aurora's January 12, 2012 assignment. Further, even if the Court agreed that the January 12, 2012 assignment was fatally flawed, there is no evidence indicating that Aurora acted with malice. It appears Aurora made good faith efforts to ensure its ability to foreclose on Propes' property. For these reasons, the Court finds that Propes has failed to demonstrate any likelihood of success on the merits with respect to his slander of title claim.

### III. IRREPARABLE HARM

Propes will suffer irreparable harm if the sheriff's sale occurs and he loses his property. *See Gomez v. Marketplace Home Mortg., LLC*, Civ. No. 12-153, 2012 WL 1517260, at *3 (D. Minn. Apr. 30, 2012). This factor favors Propes.

### IV. BALANCE OF HARMS

The parties' briefs do not address the balance of harms, but the factor seems to favor Propes. "'[L]osing a basic necessity such as shelter is a greater harm to an individual . . . than a company's temporary loss of income.'" *Id.* (quoting *Saygnarath v.*

*BNC Mortg., Inc.*, Civ. No. 06-3465, 2007 WL 1141495, at *3 (D. Minn. Apr. 17, 2007). Without knowing how difficult it would be for Propes to secure new living arrangements, the Court cannot assess how strongly this factor favors Propes.

## V. PUBLIC INTEREST

The parties' briefs also do not address the public interest and there are a number of competing interests at stake. For example, there is a public interest in "preventing unnecessary foreclosures and maintaining home ownership." *Gomez*, 2012 WL 1517260, at *3. On the other hand, there is a public interest in lenders minimizing their losses when a debtor defaults on a valid debt. *Cf. Saygnarath*, 2007 WL 1141495, at *3. Absent arguments from the parties, the Court cannot declare that the public interest weighs heavily enough in either direction to impact the resolution of Propes' motion.

## VI. CONCLUSION

Because the first factor – probability of success on the merits – strongly favors Aurora, the balance of equities does not so favor Propes as to justify the Court's intervention. Although Propes faces irreparable harm and the balance of harms may weigh in Propes' favor, injunctive relief is not warranted because Propes is highly unlikely to prevail on the merits. *See, e.g.*, *Gomez*, 2012 WL 1517260, at *4.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Propes' Motion for a Preliminary Injunction [Docket No. 7] is **DENIED**.

DATED: November 19, 2012            ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                                                                  United States District Judge